# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| LEWIS E. ARNOLD, | ) | CASE NO.  1:16CR305 |
| | ) | 1:18CV1910 |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | ORDER AND JUDGMENT ENTRY |
| Respondent. | ) | |

The instant matter is before the Court upon Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255.  Doc. 42.  The petition is DENIED.[1]

On January 20, 2017, Petitioner Lewis Arnold pled guilty to the indictment in this matter. On May 23, 2017, this Court sentenced Arnold to 188 months incarceration.  On February 13, 2018, the Sixth Circuit affirmed this Court's sentence.  On August 16, 2018, Arnold filed his motion to vacate, and the Government filed its response on November 2, 2018.  The Court now resolves the motion.

"To prevail under 28 U.S.C. § 2255, a defendant must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). A federal district court may grant relief to a prisoner in custody only if the petitioner can "demonstrate the existence

---

[1] Petitioner's motion for an extension of time to file a reply brief is DENIED.  Doc. 45.  A reply brief would not aid the Court in its review and is unnecessary to resolution of this matter.

1

of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003).

Petitioner's burden to establish an ineffective assistance of counsel claim is two-fold. Under the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), Petitioner must first show that counsel's performance was deficient. Pursuant to *Strickland*, "deficient" conduct is not simple error; counsel must have erred so "serious[ly] that counsel was not functioning as the 'counsel' guaranteed...by the Sixth Amendment." *Id*. at 687. When evaluating counsel's performance, a court is required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (internal citation omitted).

If deficient conduct is identified, Petitioner must then demonstrate that counsel's deficient performance prejudiced his defense. *Id*. at 692. To demonstrate prejudice, it is not enough to show that the "errors had some conceivable effect on the outcome of the proceeding" as any "act or omission of counsel would meet this test." *Id*. at 693. Instead, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 693. In effect, counsel's performance must have "caused the defendant to lose where he would probably have won" by conduct "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis omitted).

Arnold presents a laundry list of his counsel's deficient conduct. Arnold's assertions fall into two categories: 1) assertions directly contradicted by the record and 2) assertions that are legally irrelevant. The Court will now address those assertions.

2

The Court will begin with assertions made by Arnold that have no legal significance as it relates to his claim of ineffective assistance of counsel. Arnold first asserts that counsel failed to object to his classification as a career offender "based on the minute amount of drugs discovered on his person." However, Arnold admitted that he was guilty of the drug offenses in the indictment, and those convictions mandated a conclusion that Arnold was a career offender. Similarly, Arnold takes issue with his counsel allowing to plead guilty when another individual claimed ownership of the firearm. First, more than one individual can be charged with possession of a firearm. Second, once again, Arnold admitted under oath that he possessed the firearm. Thus, he can establish no prejudice from the alleged failures of his counsel.

Arnold also claimed that his counsel failed to object to the use of certain photographs during his sentence. However, there is no limitation on the evidence that can be considered by this Court at sentencing, and Arnold was not unfairly prejudiced in any manner by the Government's presentation of evidence.

The remainder of Arnold's assertions focus on his open plea agreement. Arnold contends that his counsel: 1) never explained the risks and benefits of accepting such a plea; 2) never ensured production of his interrogation video prior to the plea being entered; 3) failed to investigate the facts of his case; and 4) failed to advise him of the consequences he faced following his plea. Each of Arnold's contentions is directly contradicted by the record.

At the outset of his change of plea hearing, Arnold's counsel stated:

> I went over yesterday and spent some time with the defendant. I think I've answered all of his questions now. I think he's very comfortable in an open plea. I went over the factual basis that was prepared in the proposed plea agreement that never came to fruition. I think he understands the factual basis. I think he understands what you're going to ask him, and we would ask the Court to proceed with an open plea.

Doc. 38 at 2. The Court then inquired regarding whether the proposed plea agreement had been gone over in detail. Counsel indicated that a review had occurred and gave the following detail:

3

> He and I have been over that not only yesterday, but as you know, we first asked for an open plea, and then in between the time that we asked for an open plea and the date that we were back here in court last time, we did come to some tentative agreement with the government. And then at that time he and I discussed that and then rediscussed it, and he decided to go with an open plea. So he and I have gone over the plea agreement that was prepared. I think he understands what's contained in that and the difference in the guideline calculations and everything -- the appellate rights and everything else he needs to know. I think he's prepared to go on with an open plea.

Doc. 38 at 2-3. The Court then directly engaged with Arnold. Arnold was asked whether he had been given the time and had actually gone over the matter with his counsel. Arnold indicated that he had. Doc. 38 at 6. Arnold indicated that this included reviewing and rejecting the proposed plea agreement. Arnold also indicated that he was fully satisfied with the advice he had received from counsel. Doc. 38 at 6.

The Court then detailed both the statutory penalties and advisory guidelines related to Arnold's convictions. Arnold indicated that he understood the Court's explanations of both of these items. The Court also explained the sentencing factors that the Court would consider following a guilty plea. Later, Arnold was asked whether anyone attempted to force, coerce, or threaten him to enter his plea. Arnold responded, "No." Doc. 38 at 14. The Government then presented the factual basis for the plea, and Arnold admitted to engaging in that conduct. Doc. 38 at16.

Based upon the Court's review of the plea colloquy and sentencing hearing, Arnold's claims do not create an issue necessitating an evidentiary hearing. The record refutes any assertion that Arnold was not advised about the distinction between a plea agreement and an open plea. It further refutes any notion that was not advised of the consequences of his guilty plea. Finally, to the extent that Arnold suggests that his counsel was ineffective for failing to pursue a binding plea agreement, Arnold is incorrect. This Court would not have accepted such an agreement, and counsel was correct in advising Arnold in such a fashion.

4

Arnold also seems to suggest that counsel was ineffective for failing to advise him that an *Anders* brief would be filed in his appeal. As the Sixth Circuit ensures notice of such a filing is provided to a defendant, Arnold's claim that he did not receive such notice is given no weight.

Arnold's repeated conclusory assertions about the deficient performance of his counsel do no warrant an evidentiary hearing. While Arnold effectively contends that his counsel did nothing at all, the record belies those contentions. Moreover, while Arnold contends that counsel failed to investigate his case, he offers no details. He does not suggest any aspect of the case that should have been investigated, nor offers any theories or witnesses that were not pursued. As such, he has not created any issue that warrants this Court conducting an evidentiary hearing.

Finally, Arnold appears to suggest that his due process rights were violated when the Government failed to provide his counsel the video of his interrogation. Once again, Arnold's assertion is contradicted by the record. This video was discussed during sentencing, and the Government confirmed that it had been provided during discovery. Doc. 39 at 47. As such, no hearing is necessary, and the Court finds no merit in Arnold's contention.

For the foregoing reasons, Petitioner Lewis Arnold's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is hereby **DENIED.**

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

Dated: March 21, 2019  /**s/** *John R. Adams*
**JOHN R. ADAMS**
**UNITED STATES DISTRICT JUDGE**